1  **WO**
2
3
4
5
6  **IN THE UNITED STATES DISTRICT COURT**
7  **FOR THE DISTRICT OF ARIZONA**
8

| | |
|---|---|
| Danny Earl Johnson, | No. CV-17-02236-PHX-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Claimant Danny Earl Johnson's appeal of the Social Security Administration's (SSA) decision to deny disability insurance benefits and supplemental security income benefits. (Doc. 15). For the following reasons, the Court affirms the denial of benefits.

## BACKGROUND

Danny Johnson filed for disability and supplemental security income benefits on June 26, 2013, alleging a disability onset date of June 22, 2013. His claim was denied on October 4, 2013; reconsideration was denied on April 9, 2014. (Tr. 132, 141). Mr. Johnson requested a hearing from an administrative law judge (ALJ), which was held on November 3, 2015. The ALJ determined that Mr. Johnson had the following severe impairments: status post lumbar fusion, status post left hemicolectomy for resection of colon cancer, hypertension, obesity, chronic pain syndrome, opioid dependence, and depressive disorder. (Tr. 25). With these impairments, the ALJ found that Mr. Johnson had the residual functional capacity ("RFC") to perform sedentary work that is simple,

routine, and repetitive. (Tr. 28). Because the ALJ determined that Mr. Johnson could perform work that exists in significant numbers in the national economy, the ALJ found that Mr. Johnson was not disabled under the Social Security Act. (Tr. 34). The Appeals Council denied the request to review, making the Commissioner's decision final. (Tr. 1–4). Mr. Johnson now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Legal Standard

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n. 13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less than a preponderance." *Id*. (quotation omitted). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id*. (quotation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). When evidence is "subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981, F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

### II. Analysis

Claimant alleges that the ALJ erred by (1) improperly rejecting Claimant's treating and state agency physicians' opinions and (2) failing to incorporate Claimant's limitations of concentration, persistence, and pace into the RFC. Claimant also argues

that he is entitled to remand under sentence six of § 405(g) due to new and material evidence.

### A. Physicians' Opinions

A "treating physician" is one who actually treats the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When a treating doctor's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons. *Id*. If a treating doctor's opinion is contradicted by another doctor, it may only be rejected for "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id*. In general, the opinions of treating physicians are given more weight than examining non-treating physicians, and the opinions of examining physicians are given more weight than non-examining physicians. *See* 20 C.F.R. § 404.1527(c)(1)–(2). In the case of a treating doctor, the ALJ considers the length of the treatment relationship, and the nature and extent of the treatment relationship. *Id*. at § 404.1527(c)(2)(i)–(ii). For all medical providers, the ALJ considers factors such as whether the provider supports their opinion with evidence and whether the opinion is consistent with the medical record. *Id*. at § 404.1527(c)(3)–(6). Where substantial evidence contradicts a treating doctor's opinion, the doctor's opinion is not entitled to controlling weight. *See Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### 1. Dr. Laura Stewart

Psychologist Dr. Laura Stewart completed a Mental Residual Functional Capacity Assessment on November 3, 2015. Dr. Stewart marked that Claimant had moderately severe to severe impairments in all of the listed functions. (Tr. 826–27). Dr. Stewart stated that the time period covered by this assessment was from September 1, 2015 to September 1, 2015, the day Claimant began his opioid detoxification program. (Tr. 828, 794). The ALJ gave this opinion no weight, as a single day assessment could not satisfy the twelve-month durational requirement. (Tr. 32). A claimant must establish "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a

continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The day previous to this assessment, on November 2, 2015, Dr. Stewart provided a written explanation of Claimant's impairments. Dr. Stewart opined that Claimant's pain "creates a challenge for him to manage basic physical, cognitive[,] and emotional functions . . . includ[ing] maintaining concentration, focus and[,] working memory." (Tr. 829). Dr. Stewart further stated that Claimant's use of narcotic medication "complicates his ability to function effectively in a work place setting." *Id*. Dr. Stewart stated that this assessment covered the time period of June 2013 to September 2015. The ALJ afforded minimal weight to this opinion. The ALJ stated that Dr. Stewart's opinion was "only persuasive for the time period she actually treated the claimant." (Tr. 32), which did not apparently take place until September 2015. The ALJ also noted that Dr. Stewart's assessment of Claimant's cognitive and emotional function was "inconsistent with the actual treatment record and medical providers and examining doctors' observations during this time period." *Id*.

Claimant asserts that Dr. Stewart's November 2nd assessment (June 2013–September 2015) was intended to modify Dr. Stewart's November 3rd assessment (September 1, 2015), and thus provide support for a disability continuing for the twelve-month durational period. However, it is not clear how an earlier-dated opinion can modify a later-dated opinion. Even if Dr. Stewart simply confused her dates, it was not error for the ALJ to not consider the November 2nd opinion as a modification—the documentation itself does not obviously support a conclusion that the November 2nd opinion was intended to modify the November 3rd opinion. Dr. Stewart does not state that it is a modification. Claimant's attorney's cover letter states that the November 2nd opinion was a modification, but Claimant's attorney is not the medical provider. (Tr. 822). Therefore, it was not error for the ALJ to discount Dr. Stewart's November 3rd opinion for failing to meet the durational requirement.

The ALJ assigned Dr. Stewart's November 2nd opinion minimal weight, in part because it was a retrospective opinion, covering the period of June 2013 to September

2015. A retrospective diagnosis, "standing alone, may not be sufficient to discount the opinion of a treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). But, where the treating doctor has no "direct personal knowledge" of a claimant's condition prior to when the doctor-patient relationship began, the treating doctor's opinion of an earlier period is "scarcely different from any non-treating physician with respect to that time period." *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th 1989). The ALJ's decision was not based solely on the fact that the opinion was retrospective; the ALJ also noted that the opinion was inconsistent with the record. Although the ALJ did not provide a specific citation to the record after that statement, the earlier parts of the ALJ's opinion provide a detailed discussion of the medical record relating to Claimant's mental health. (Tr. 26–28, 30-31). That discussion indicated inconsistencies with Dr. Stewart's assessment: Claimant's daily activities demonstrated no mental impairments, Claimant maintained social functioning with his family, and Claimant scored fairly high on a mental status exam with only minimal intermediate memory difficulties. The ALJ did not err in discounting Dr. Stewart's opinions.

### 2. Dr. Shelly Woodward

Dr. Shelly Woodward, a State agency psychology consultant, completed an examination of Claimant on April 2, 2014. Dr. Woodward noted that Claimant's hygiene and grooming were normal, he made good eye contact, and had logical thought processes. (Tr. 587). Claimant scored a 26 out of 30 on a mental exam, during which he was alert. *Id*. His immediate memory and remote memory were intact, but his intermediate memory was impaired, as he forgot one of the three words he was tasked to remember after a delay and interference task. *Id*. Dr. Woodward diagnosed Claimant with depressive disorder. (Tr. 588). Dr. Woodward believed that Claimant's mental impairments would last for twelve months or more. (Tr. 589). She stated that he "may have difficulty maintaining attention and concentration for extended periods; completing a normal workday and workweek without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest

periods." *Id*. She also opined that Claimant was "preoccupied with his physical limitations[ and] thought content was depressive. He may have difficulty working in coordination with or proximity to others without being distracted by them." (Tr. 590).

The ALJ assigned Dr. Woodward's opinion partial weight. (Tr. 31). The ALJ accepted Dr. Woodward's diagnosis of depressive disorder, but gave no weight to Dr. Woodward's statements about the ways in which the Claimant might have difficulty in the workplace. Because Dr. Woodward's statements were qualified with the word "may," the ALJ found that Dr. Woodward's opinions were speculative. *Id*. The ALJ also found that the conclusions were not supported by the weight of the evidence in the record. *Id*. The ALJ was entitled to consider Dr. Woodward's own words in determining that her prognostications were speculative and thus did not err in discounting her opinion.

### 3. Dr. Sheba Shah

Dr. Sheba Shah completed a Physical Capacities Evaluation form on November 3, 2015, for a time period between August 11, 2015 and November 3, 2015. Dr. Shah noted that Claimant could sit for four hours, stand for two hours, and walk for two hours in a day. (Tr. 820). Dr. Shah stated that Claimant could lift up to twenty pounds frequently. *Id*. Because of "lethargy, fatigue, [and] cognitive clouding" due to medication side effects, Dr. Shah noted that Claimant would have moderate restrictions in his ability to pay attention, maintain interpersonal relationships with coworkers, respond to customary work pressure, and provide consistent work effort. (Tr. 821).

The ALJ assigned Dr. Shah's opinion little weight. (Tr. 32). The ALJ found that the "severity of symptoms and degree of limitation alleged is inconsistent with the treatment records." *Id*. The ALJ did not provide specific citations to the record after that statement. However, as with Dr. Stewart, the ALJ's opinion, on the whole, contains thorough discussions of Claimant mental health medical records. (Tr. 26–28, 30–31). The ALJ had earlier discussed that Claimant had maintained normal social functioning, contradicting Dr. Shah's opinion that Claimant would struggle to interpersonal relationships. Similarly, Claimant's mental examinations revealed minimal memory

impairments and that Claimant was alert throughout the examination, contradicting Dr. Shah's opinion that Claimant would struggle to pay attention and concentrate. Substantial evidence supports the ALJ's decision and it was not error to discount Dr. Shah's opinion.

### B. Residual Functional Capacity Determination

The ALJ determined that Mr. Johnson had severe impairments, but that they did not meet or medically equal a listed impairment. (Tr. 26). When an impairment does not meet or equal a listed impairment, the ALJ must make a finding about the claimant's residual functional capacity. The RFC is then used at steps four and five of the sequential process to determine whether the claimant can return to past relevant work or adjust to other work in the national economy. 20 C.F.R. § 404.1520(e). A claimant's RFC "is the most [the claimant] can still do despite [the claimant's] limitations." *Id*. at § 404.1545(a)(1). In assessing an RFC, ALJs must consider "all of [the claimant's] medically determinable impairments." *Id*. at § 404.1545(a)(2).

Claimant argues that the ALJ erred by failing to properly account for his mental limitations in the RFC. The ALJ determined that Claimant had the severe mental impairment of depressive disorder. (Tr. 25, 26–28). The ALJ further determined that Claimant's mental limitations did not meet or medically equal a listed impairment. This analysis is done at steps two and three of the sequential evaluation process to rate the severity of a mental impairment, and is not itself an RFC assessment. SSR 96-8p. In considering whether Claimant's mental health limitations met a listing impairment, the ALJ found that Claimant had moderate restrictions of concentration, persistence, and pace. (Tr. 27). The ALJ found that although "the claimant still has the ability to sustain focused attention and concentration sufficiently long enough to permit the timely and appropriate completion of tasks commonly found in work settings," the Claimant's "intermediate memory appeared to be somewhat impaired as judged by his ability to recall 2 of 3 words after a brief delay and interference task." (Tr. 27). Therefore, the ALJ noted that "[t]hese limitations are accommodated in the residual functional capacity

reached herein and he is restricted to simple, routine, and repetitive work tasks involving simple work related decisions and simple instructions" *Id*.

Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). SSA regulations require that the "decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work." SSR 85-15. Unskilled work requires the abilities "to understand, carryout, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." *Id*.

Claimant, in contesting the ALJ's RFC, notes that impairments of concentration, persistence, or pace are not necessarily provided for by limiting a claimant to unskilled work. *See Wendte v. Colvin*, No. CV-12-1523-PHX-GMS (D. Ariz. filed, May 30, 2013). Claimant also argues that Dr. Shah noted that Claimant would likely miss more than four days of work per month due to back pain. Claimant fails to explain why a provider's statement about physical difficulties is relevant to the question of whether Claimant's mental impairments were properly considered in the RFC. Here, the ALJ tailored the RFC to the Claimant's specific difficulties in concentration, persistence, and pace. The ALJ found that Claimant's allegations of difficulty with focus, attention, and concentration were not fully supported by the record. (Tr. 30). Claimant obtained a score of 26 out of 30 point on a mini mental status exam, was found to be alert, had an intact immediate memory, and engaged in daily activities that require capabilities similar to those necessary for maintaining employment (Tr. 30–31). Claimant's difficulties with intermediate memory were accounted for by limiting Claimant to simple, routine, and repetitive tasks. The ALJ properly provided for Claimant's limitations.

### C. Sentence Six Remand

Claimant's Opening Brief includes an exhibit which contains additional medical records. (Doc. 15, Ex. 1). Claimant asserts that these new records "reflect that the hardware that had been inserted at the prior lumbar surgery was the likely cause of

Johnson's continued pain" and that "Johnson experienced significant improvement after removal of the hardware, such that he has been able to attempt a return to work." (Doc. 15, pp. 24–25; Ex. 1, p. 18). Claimant believes that this new evidence contradicts the ALJ's decision that Claimant's allegations of pain were not supported by the record. Therefore, Claimant requests that the Court remand for further consideration by the ALJ, pursuant to sentence six of § 405(g). The Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). New evidence is material where it "must bear 'directly and substantially on the matter in dispute.'" *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001) (quoting *Ward v. Schweiker*, 686 F.2d 762, 764 (9th Cir. 1982)). The claimant must "additionally demonstrate that there is a 'reasonable possibility' that the new evidence would have changed the outcome of the administrative hearing." *Mayes*, 276 F.3d at 462 (quoting *Booz v. Secretary of Health & Human Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1983)). The good cause standard is met when the claimant demonstrates "that the new evidence was unavailable earlier." *Mayes*, 276 F.3d at 463. A claimant cannot meet the requirement "by merely obtaining a more favorable report once his or her claim has been denied." *Id.*

Claimant has not established that this new evidence is material. That Claimant's doctors have identified a cause of pain and a remedy does not prove that Claimant was previously disabled. Nor does it prove that Claimant's prior statements about the level of pain and incapacitation are in fact supported by the record. Claimant has not demonstrated a reasonable probability that the new evidence would change the outcome. The Court declines to remand under sentence six.

**CONCLUSION**

The ALJ did not err in discounting the weight given to Drs. Stewart, Woodward, and Shah. The ALJ's decision was supported by substantial evidence, as discussed throughout the ALJ's opinion. The ALJ did not err in formulating the RFC. At Step Two,

the ALJ determined that Claimant had moderate limitations in concentration, persistence, and pace, due to findings of impairment of his intermediate memory. At Step Four, the ALJ accounted for such an impairment by limiting the Claimant to routine and simple work. The ALJ tailored the RFC to Claimant's specific impairments. Remand is not appropriate under sentence six. Claimant's new evidence does not establish a reasonable probability of changing the outcome. The fact that Claimant is now improving does not establish that Claimant was previously disabled.

**IT IS THEREFORE ORDERED** that the ALJ's decision to deny disability and supplemental security income benefits is affirmed. The Clerk of Court is directed to enter judgment accordingly.

Dated this 12th day of July, 2018.

Honorable G. Murray Snow
United States District Judge